NOTICE

Decision filed 10/14/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230330-U

NO. 5-23-0330

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-895 |
| | ) | |
| ANDREW J. KISER, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirm defendant's conviction for aggravated driving under the influence of alcohol where: (1) the evidence was sufficient to support a finding of guilt beyond a reasonable doubt; (2) there were no errors related to the admission of defendant's field sobriety test results; (3) defendant forfeited review of the out-of-court statement of a nontestifying nurse; and, (4) the prosecutor did not err by making statements that were reasonable based on the evidence during closing arguments.

¶ 2   The defendant, Andrew Kiser, was convicted following a Champaign County jury trial of aggravated driving under the influence of alcohol. Defendant raises numerous issues on appeal.[1] First, he argues that the evidence at trial was insufficient to convict him of aggravated driving under the influence. Next, he argues that the prosecutor committed reversible error by eliciting

---

[1]We note that defendant completed his term of imprisonment but has not yet completed his mandatory supervised release.

1

inadmissible evidence against the defendant. Third, he argues that he was deprived of the effective assistance of counsel. Finally, he argues that the prosecutor committed reversible error during closing arguments. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     We limit our recitation to those facts relevant to our disposition of this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties.

¶ 5     On July 30, 2021, the State charged defendant by information with aggravated driving under the influence of alcohol, a Class 2 felony. 625 ILCS 5/11-501(d)(2)(B) (West 2020). The information alleged that defendant drove or was in physical control of a motor vehicle at a time when defendant was under the influence of alcohol, and defendant had two other aggravated driving under the influence convictions in Champaign County, Illinois (1997-DT-405), and Fond du Lac County, Wisconsin (2019-CF-601).

¶ 6     Following a mistrial on December 1 and 2, 2022, defendant proceeded to a jury trial in February of 2023. On February 8, 2023, the matter proceeded to the first day of jury trial. Initially, the trial court noted that it had People's Exhibit 1, certified copies of convictions from Wisconsin. The court empaneled a jury.

¶ 7     On February 9, 2023, the State presented evidence. The State's first witness was Trooper Christopher Wittemann. On December 10, 2020, Trooper Wittemann was on duty for routine traffic enforcement on I-57 around mile post 246. Trooper Wittemann noticed a vehicle traveling southbound at a high rate of speed. Using his radar, Trooper Wittemann determined that the vehicle traveled 92 miles per hour in a 70-mile-per-hour zone. Therefore, he initiated a traffic stop.

¶ 8    Trooper Wittemann contacted the driver of the car. He identified defendant in open court as the driver. Upon approaching the vehicle, defendant cracked the window three to four inches. Trooper Wittemann asked defendant to roll the window down completely. Trooper Wittemann observed that defendant's "eyes were glassy and watery." Trooper Wittemann testified that while he spoke to defendant, he "smelled a moderate odor of an alcohol beverage emitting from his breath."

¶ 9    Trooper Wittemann returned to his squad car to check defendant's license. While in his squad car, Trooper Wittemann observed defendant making "furtive movements" and "reaching behind the front passenger seat to the rear on the rear floorboard area." The parties stipulated that Trooper Wittemann had legal grounds to search defendant's vehicle. Upon searching the vehicle, Trooper Wittemann located a "cold-to-touch, half full, Icehouse beer can." The beer was "standing up on the floorboard directly behind the passenger seat."

¶ 10   Upon removing the beer from the vehicle, Trooper Wittemann decided to conduct a standardized field sobriety test. Trooper Wittemann testified that he was familiar with the National Highway and Traffic Safety Administration (NHTSA), the governing body over field sobriety testing. Trooper Wittemann testified that he was trained in NHTSA standards at the Illinois State Police Academy. Trooper Wittemann testified that field sobriety testing is done to determine if a driver is under the influence of alcohol and drugs. The first test is the horizontal gaze nystagmus test (HGN). The second test is the walk-and-turn test. The third test is the one-leg stand test.

¶ 11   Trooper Wittemann testified about the various field sobriety tests. He then testified that he performed the tests on defendant. First, Trooper Wittemann conducted a medical check. Generally, "you ask their overall general health" and whether the person has "any eye problems or abnormalities." Trooper Wittemann checked for equal pupil size. Defendant had equal pupil size,

3

and there was no resting nystagmus and equal tracking. On cross-examination, Trooper Wittemann testified that he asked defendant whether he wore contacts or glasses. Trooper Wittemann also asked defendant if he had any medical conditions. Defendant indicated that he was cold. Prior to the walk-and-turn test, defendant told Trooper Wittemann that he suffered from back issues.

¶ 12 First, Trooper Wittemann observed nystagmus in both defendant's eyes. Trooper Wittemann testified that there are six clues total, "three in each eye." Trooper Wittemann's training indicated that four "clues" in the HGN test indicate impairment, and defendant had six clues. This led Trooper Wittemann to believe that defendant was under the influence of alcohol.

¶ 13 On redirect examination, Trooper Wittemann explained the nystagmus test as the observation of "involuntary jerking of the eye." He described it as "a windshield with windshield wipers." He explained: "So if you have nystagmus, picture a windshield that is dry and you run your windshield wipers, it's gonna make a loud noise and it's gonna jerk." With the eye, if one does not have nystagmus, "your wipers are gonna be smooth." Like a "windshield that's wet, it's raining, your wipers move smoothly." According to Trooper Wittemann, defendant's eyes were jerking, and it was "open and obvious."

¶ 14 Trooper Wittemann next conducted the walk-and-turn test. There are eight clues to look for during the test. The presence of two clues indicates impairment. The eight clues are: balance in the starting position, whether they start the test too soon, whether they stop walking during the test, whether they miss "heel to toe," whether they step off the line, whether they raise their arms for balance during the test, whether they take an incorrect number of steps, and if they conduct an improper turn.

4

¶ 15    Defendant failed the test by showing three clues of impairment: defendant was unable to keep his balance in the starting position, defendant missed heel to toe, and defendant raised his arms for balance. Trooper Wittemann also noted that during the turn, defendant stumbled.

¶ 16    Finally, Trooper Wittemann conducted the one-leg stand. Trooper Wittemann testified that there are four clues for the one-leg stand test, and two clues show impairment. Trooper Wittemann testified that the four clues are: "swayed while balancing, used arms to balance, hopped and set your foot down." Defendant showed two clues. Defendant used his arms for balance, and he set his foot down. Trooper Wittemann also noted that during the instruction phase, defendant started the test before he was instructed to begin.

¶ 17    Based on the field sobriety testing, Trooper Wittemann believed that defendant was under the influence of alcohol. He placed defendant under arrest. Defendant's field sobriety testing was recorded on Trooper Wittemann's state police squad car dash camera. The dash camera footage was entered into evidence as People's V1 and People's V2.

¶ 18    After reading defendant the warning to motorists, Trooper Wittemann asked defendant whether he would provide a breath sample. Defendant indicated that he would provide a sample after he urinated. Defendant was allowed to urinate but thereafter refused to provide a breath sample. Trooper Micele arrived on-scene, and defendant was placed into Trooper Micele's squad car. Defendant demanded to be taken to the hospital for a blood draw and urine sample.

¶ 19    Trooper Wittemann accompanied defendant to the hospital. Trooper Wittemann advised a receptionist that defendant would provide blood and urine samples for a DUI kit. Upon being placed in a triage room, defendant "became belligerent and [started] yelling." Defendant "started hooking himself up" to "pulse reading machines" while "yelling that he had heart issues." A nurse entered the room to check defendant's heart rate and pulse. The nurse advised that defendant

5

needed to be admitted to the hospital. Defendant was moved to the emergency room. Trooper Wittemann testified that: "At that point, due to his immediate medical needs and his refusal on scene, he was issued a notice to appear citation. So he was not taken to jail. He was given a court date. All of his citations were left with him as well as his copies of the warning to motorists and sworn report."

¶ 20 Trooper Wittemann returned to his squad car. He realized that he forgot to print a citation. Trooper Wittemann spoke with a bystander for approximately 20 minutes, then he returned to the hospital to provide defendant with his citation. Upon reentering the hospital, Trooper Wittemann observed defendant standing at the front lobby desk. Defendant was not hooked up to any machines, nor was he being treated for a medical event.

¶ 21 Trooper Wittemann testified that he "did not see the defendant holding any of the papers that I had left in his hospital room." Thus, Trooper Wittemann went to the emergency room bay where defendant was to look for the papers. Trooper Wittemann could not locate any papers, and he returned to the lobby to speak to defendant. Upon his return to the lobby, defendant locked himself in a bathroom. Trooper Wittemann testified that "[a]t that point, we just left" because defendant "was issued all of his paperwork with his court date and the incident was over." The State then published People's V1 and V2 to the jury, the dash cam footage from Trooper Wittemann's vehicle.

¶ 22 Trooper Wittemann testified that he ultimately determined that defendant was under the influence of alcohol. Trooper Wittemann based this opinion on several factors: defendant driving 92 miles per hour in a 70-miles-per-hour zone; that defendant "only cracked" the window upon Trooper Wittemann's approach; defendant's eyes were "glassy" and "watery"; the "moderate odor of an alcoholic beverage emitting from [defendant's] breath"; and "the open, half full, cold-to-

touch Icehouse beer can" that Trooper Wittemann found in defendant's car. Finally, "during field sobriety, he showed signs of impairment." Thus, Trooper Wittemann concluded that defendant was under the influence of alcohol. Defense counsel objected on grounds of speculation, which the trial court overruled.

¶ 23    Relevant to this appeal, on redirect examination, Trooper Wittemann testified that a nurse advised that defendant should be admitted to the hospital due to heart issues. The State asked, "what did the nurse say to you about his treatment?" Defense counsel objected on hearsay grounds. The trial court overruled the objection. Trooper Wittemann answered that the nurse advised that defendant refused medical treatment after Trooper Wittemann and Trooper Micele left the room. When the officers left, defendant proceeded to the lobby. Upon spotting the officers in the lobby, defendant locked himself in the bathroom.

¶ 24    Following Trooper Wittemann's testimony, the State rested. Defendant moved for a directed verdict. The trial court denied the motion. Defendant chose not to testify, and the defense rested. The parties proceeded to closing argument.

¶ 25    During closing argument, relevant to this appeal, the State said, "So if he hadn't been drinking, of course he would blow because—" Defense counsel objected on grounds of burden shifting. The trial court overruled the objection. The State later stated: "They go to the hospital. And what happens there? He immediately starts putting the wires on himself and has a medical emergency so he can't do the test. And then as soon as the troopers leave what happens? He's fine." Defendant objected and stated that the State misstated the evidence. The trial court overruled the objection.

¶ 26    The State later stated, "If someone due to drinking any amount of alcohol is a little bit slower or a little bit cloudier or a little bit inattentive, just a little bit, they're not safe to be behind

7

the wheel. That's why the law—" Defense counsel objected on the grounds that the State misstated the law. The court stated, "Counsel may argue, but the arguments of lawyers are not to be taken as statements of law. Instructions on the law will come from me after the final arguments are completed."

¶ 27    The State continued, "Buzzed driving is drunk driving." Defense counsel again objected on grounds that the State misstated the law. The trial court sustained the objection. The State continued "He's drinking to be buzzed, and buzzed driving means he's under the influence." Defense counsel objected that the State misstated the law. The trial court said, "I don't see the word buzzed anywhere in that definition of under the influence." The State explained, "Buzzed is reducing your ability to think and act with ordinary care. That is the definition." Defense counsel again objected. The court stated, "I'll allow you to argue."

¶ 28    Later in the argument, the State stated, "And then they get him to the hospital and he starts faking clearly a medical emergency." Defense counsel objected that the State misstated the evidence. The trial court stated:

> "Ladies and gentlemen of the jury, please ignore the banter between the attorneys. If there is a possible misstatement of the evidence, you should be advised that any statements by the lawyers that are not based on the evidence should be disregarded by you. You should use your own recollection of the evidence.
>
> Again, I remind you that what the lawyers say during arguments is not evidence. Counsel may argue, but arguments of the lawyers are not statements of the law. The instructions of law will come from me after the final arguments are completed.
>
> Please proceed."

8

¶ 29 The State later argued: "He's drinking alcohol while driving here." Defense counsel objected on the grounds that the State misstated the evidence. The trial court stated, "Counsel may argue, but again, if the attorneys argue facts that are not based on the evidence, you should disregard those arguments." On rebuttal, the State argued: "A reduced ability from ordinary care is a very small step down from normal." Defense counsel objected on the grounds that the State misstated the law. The trial court overruled the objection. Later, the State argued, "If he had questions, he should have asked them." Defense counsel objected on the grounds of burden shifting. The trial court overruled the objection.

¶ 30 The State later argued, "the nurse is the one who said that the defendant jumped up and took all the stuff off and left on his own without any medical treatment." Defense counsel objected on the grounds that the State misstated the evidence. The trial court stated:

"Ladies and gentlemen, again, if a lawyer argues something that is not based on the evidence, you should disregard that argument. You should rely on your own recollection of the evidence. And what the attorneys say in closing argument is not evidence and should not be considered as such.

Please proceed."

¶ 31 The trial court provided the jury with instructions, and the jury retired to deliberate. After two hours of deliberation, the jury found defendant guilty of driving under the influence of alcohol.

¶ 32 On March 9, 2023, defendant filed a motion for acquittal, or in the alternative, motion for a new trial. Defendant raised the following issues in his motion for a new trial: (1) the court erred by finding probable cause at the preliminary hearing on November 10, 2021; (2) the court erred by not granting the defense objections made during the presentation of evidence; (3) the court erred by granting the State's objections during the presentation of evidence; (4) the court erred by

9

denying defendant's motion for directed verdict at the close of the State's evidence; (5) the court erred by denying defendant's motion for directed verdict at the close of defendant's evidence; (6) the court erred by overruling "some" of the defendant's objections to the State's "misstatement of law during closing argument"; and, (7) the above mentioned errors had a cumulative effect of prejudicing the jury against defendant. Defendant also argued: (1) the verdict was contrary to the law and evidence; (2) defendant was deprived of a fair trial by an impartial jury; (3) the verdict was a result of insufficient deliberation; (4) the verdict was the result of passion, bias, and prejudice; and (5) the verdict was against the weight of the evidence such that no rational jury could find the State proved defendant guilty beyond a reasonable doubt.

¶ 33    The trial court held a hearing on defendant's motion on March 30, 2023. Following arguments from the parties, the trial court denied the motion. The matter proceeded to sentencing. Following arguments of the parties and a statement from defendant, the trial court sentenced defendant to three years in prison with one year of mandatory supervised release. On April 19, 2023, defendant filed a motion to reconsider sentence. On April 28, 2023, the trial court denied the motion to reconsider. The same day, defendant filed a timely notice of appeal.

¶ 34                                    II. ANALYSIS

¶ 35    Defendant raises numerous issues on appeal. First, he argues that the evidence at trial was insufficient to convict him of aggravated driving under the influence. Next, he raises several issues related to field sobriety testing. Third, he argues that the prosecutor committed reversible error by eliciting inadmissible evidence against the defendant. Finally, he argues that the prosecutor committed reversible error during closing arguments. We consider each argument in turn.

¶ 36                                    A. Sufficiency

¶ 37    First, defendant argues that the evidence at trial was insufficient to convict him of aggravated driving under the influence. The State responds that it proved defendant guilty beyond a reasonable doubt. We agree with the State.

¶ 38    When presented with a challenge to the sufficiency of the evidence, our inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 64. On review, all reasonable inferences from the evidence are drawn in favor of the State. *People v. Martin*, 2011 IL 109102, ¶ 15. The reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact on questions involving the weight of the evidence, conflicts in the testimony, or the credibility of witnesses. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). A defendant's conviction will be reversed only if the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Washington*, 2012 IL 107993, ¶ 33.

¶ 39    Defendant contends that there was no "meaningful direct evidence" that he was impaired by the effects of alcohol. We disagree. In the case before us, Trooper Wittemann testified that he conducted a traffic stop after observing defendant driving 92 miles per hour in a 70-miles-per-hour speed zone. Upon approaching the vehicle, defendant only "cracked" the window open. Trooper Wittemann asked defendant to roll the window all the way down, and Trooper Wittemann observed defendant's eyes were "watery" and "glassy." When defendant spoke, Trooper Wittemann "could detect a moderate odor of an alcoholic beverage emitting from his breath." During the search of the vehicle, Trooper Wittemann "located the open, half full, cold-to-touch Icehouse beer can." Finally, during field sobriety testing, defendant showed signs of impairment. The jury viewed dash

camera footage of defendant during the stop, including the entirety of defendant's field sobriety testing. The jury also heard evidence that defendant evaded testing from law enforcement upon his arrival at the hospital. We note that the credible testimony of the arresting officer by itself can sustain a conviction of driving under the influence. *People v. Morris*, 2014 IL App (1st) 130512, ¶ 20; *People v. Janik*, 127 Ill. 2d 390, 402-03 (1989) (arresting officer's testimony about odor of alcohol, defendant's watery eyes, and defendant's poor performance on field sobriety tests was sufficient evidence of intoxication).

¶ 40    Defendant contends that both the prosecutor and Trooper Wittemann improperly relied upon defendant's refusal to submit to blood alcohol content testing as evidence of consciousness of guilt. Defendant indicates that his willingness to submit to testing on the condition that it took place indoors at the hospital undermined any consciousness of guilt. Defendant states that his failure to submit to testing at the hospital was prevented due to a medical issue and "later because [he] was in the bathroom and Witteman chose not to wait for [him] to be done." Viewing the evidence in the light most favorable to the State, however, it is reasonable to infer that defendant evaded testing by locking himself in the bathroom upon seeing law enforcement in the hospital lobby.

¶ 41    The evidence in this case was presented to the jury. By rendering its verdict of guilt, the jury determined that Trooper Wittemann's testimony was credible, and that the State proved beyond a reasonable doubt that defendant was guilty of the charged conduct. The jury, as the trier of fact, heard the testimony of the witness and was in the best position to judge his credibility. Accordingly, we cannot say that the evidence was so improbable or unsatisfactory as to render the verdict unreasonable.

¶ 42                           B. Field Sobriety Testing

¶ 43    Throughout his brief, defendant raises numerous issues related to the reliability and admissibility of field sobriety testing in this case. We address each contention in turn.

¶ 44    First, defendant suggests that the field sobriety tests in this case were unreliable and therefore improperly admitted as evidence of impairment. He suggests that Trooper Wittemann "improperly diverged from his training by categorically and summarily ignoring" defendant's medical conditions. Defendant argues that he suffered from nystagmus, astigmatism, and back problems. He also contends that Trooper Wittemann "improperly relied upon the HGN test as direct evidence of impairment." The State responds that the field sobriety tests were reliable and properly admitted as evidence of impairment. We do not find defendant's argument persuasive.

¶ 45    Initially, we note that Trooper Wittemann conducted medical checks prior to administering field sobriety testing. Prior to the HGN test, Trooper Wittemann asked defendant about his health, any eye problems, and inquired whether defendant wore contact lenses. Although Trooper Wittemann did not testify as such, the dash camera footage indicates that defendant advised that he had high blood pressure and anxiety. Defendant advised that he wore contacts and had "nystagmus." Trooper Wittemann clarified whether defendant meant he had an astigmatism. Defendant advised that he had both astigmatism and nystagmus. Trooper Wittemann testified that he checked defendant's pupil size, resting nystagmus, and equal tracking. Trooper Wittemann checked for resting nystagmus and, finding none, believed it appropriate to continue with testing. During the testing, defendant advised that he was cold and had back issues. Trooper Wittemann testified that he did not believe that he deviated from standardized test procedures. Based on the record before us, we cannot say that Trooper Wittemann "ignored" defendant's medical conditions.

13

¶ 46 Whether a field sobriety test was performed correctly goes to the test's admissibility. See *People v. McKown*, 236 Ill. 2d 278, 305-11 (2010). Trooper Wittemann testified about his training and experience with field sobriety testing, and he walked the jury through each test and his findings. The jury also viewed dash camera footage of defendant during his field sobriety testing. We see no reason to depart from settled Illinois case law that has held the tests to be reliable. *People v. Robinson*, 349 Ill. App. 3d 622, 632 (2004) ("the HGN test, when used with the walk-and-turn and one-leg stand tests, is the most accurate and effective method of detecting impairment" (citing *National Highway Traffic Safety Administration, U.S. Department of Transportation, Psychophysical Tests for DWI Arrests*, No. DOT–HS–802–424 at 39 (June 1977))); *McKown*, 236 Ill. 2d at 302-03 ("A failed HGN test is relevant to impairment in the same manner as the smell of alcohol on the subject's breath or the presence of empty or partially empty liquor containers in his car. Each of these facts is evidence of alcohol consumption ***."); *People v. Eagletail*, 2014 IL App (1st) 130252, ¶ 39.

¶ 47 Defendant also contends that the prosecutor elicited improper testimony that the HGN test can be relied upon as direct evidence of alcohol impairment, rather than mere consumption of alcohol as a precursor to impairment. Defendant argues that Trooper Wittemann "misinformed the jury that the HGN test can predict the extent of a subject's alcohol consumption, rather than merely predicting that the subject has consumed an indeterminate amount of alcohol as circumstantial evidence that their level of consumption could have been excessive." Defendant contends that this testimony resulted in substantial prejudice to him.

¶ 48 The State responds and notes that although HGN testing can only show evidence of alcohol consumption, failing such a test can be one factor indicating impairment, citing to *McKown*, 236 Ill. 2d at 302, and *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 60. The State contends that even

14

if the prosecutor overstated the probative value of the HGN test, there remained sufficient evidence to support defendant's conviction. Defendant acknowledges that this issue is forfeited where defense counsel failed to contemporaneously object and raise the issue in a written posttrial motion. However, he asks this court to review the issue under the closely balanced prong of plain error. Alternatively, he contends that his trial counsel was ineffective for failing to raise and preserve these claims.

¶ 49    As noted above, there was no error in the admission of field sobriety testing in this case. See *People v. Johnson*, 218 Ill. 2d 125, 139 (2005) (when no error occurs, there can be no plain error, and counsel cannot be ineffective for failing to raise the issue). Nonetheless, even if the field sobriety testing was removed from evidence, there remained sufficient evidence for a jury to convict defendant of aggravated driving under the influence.

¶ 50    In the case before us, Trooper Wittemann testified that he conducted a traffic stop after observing defendant driving 92 miles per hour in a 70-miles-per-hour speed zone. Upon approaching the vehicle, defendant only "cracked" the window open. Trooper Wittemann asked defendant to roll the window all the way down, and Trooper Wittemann observed defendant's eyes were "watery" and "glassy." When defendant spoke, Trooper Wittemann "could detect a moderate odor of an alcoholic beverage emitting from his breath." During the search of the vehicle, Trooper Wittemann "located the open, half full, cold-to-touch Icehouse beer can." The jury also heard evidence that defendant evaded testing from law enforcement upon his arrival at the hospital. Thus, even absent the field sobriety testing evidence, there remained sufficient evidence for a jury to find defendant guilty of the charged offense.

¶ 51    Third, defendant argues that he was deprived of the effective assistance of counsel when his trial counsel failed to seek exclusion of "unreliable expert testimony" in the form of

15

Wittemann's testimony regarding field sobriety testing. The State responds, noting that defendant cannot establish that his counsel was ineffective for failing to seek exclusion of the field sobriety tests.

¶ 52 "Establishing prejudice under the *Strickland* inquiry requires a defendant to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v. Barrow*, 195 Ill. 2d 506, 520 (2001) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The prejudice prong of *Strickland* entails more than an "outcome-determinative" test and requires a defendant to show that counsel's deficient performance rendered the result of the trial unreliable or the proceedings fundamentally unfair. *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

¶ 53 It is well settled that the strategic choices made by defense counsel, including which evidence to present and which witnesses to call, are within the realm of strategic choices that are generally not subject to attack on the grounds of ineffectiveness of counsel. *People v. West*, 187 Ill. 2d 418, 432 (1999). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the trial court must give deference to counsel's performance within the context of trial and without the benefit of hindsight. *Strickland*, 466 U.S. at 689. Because we find no error in the admission of Trooper Wittemann's testimony about the field sobriety testing that took place in this case, we need not address defendant's ineffective assistance of counsel claim based on those grounds. See *Johnson*, 218 Ill. 2d at 139 (when no error occurs, there can be no plain error, and counsel cannot be ineffective for failing to raise the issue). Counsel is not ineffective for failing to file a futile motion. *People v. Hartfield*, 2022 IL 126729, ¶ 38. On the contrary, the evidence demonstrates that defense counsel strenuously cross-examined

16

Trooper Wittemann in relation to the field sobriety testing. Defense counsel's closing argument largely centered on Trooper Wittemann's lack of experience and alleged deviation from standardized testing policies.

¶ 54    For all of these reasons, we reject defendant's contentions that the field sobriety testing evidence was unreliable and insufficient evidence of his guilt, that the prosecution made improper inferences about HGN testing, and that counsel was ineffective for failing to exclude evidence related to field sobriety testing.

¶ 55                                C. Hospital Nurse Testimony

¶ 56    Next, defendant claims that the prosecution elicited improper testimonial hearsay that a nontestifying hospital nurse told Trooper Wittemann that defendant refused medical treatment. The State responds, arguing that defendant failed to establish that the admission of the nontestifying nurse's statement that he refused medical treatment amounted to plain error. However, the State ultimately argues that the issue is forfeited. We agree with the State and find this issue forfeited.

¶ 57    Relevant to this appeal, on redirect examination, Trooper Wittemann testified that a nurse advised that defendant should be admitted to the hospital due to heart issues. The State asked, "what did the nurse say to you about his treatment?" Defense counsel objected on hearsay grounds. The trial court overruled the objection. Trooper Wittemann answered that the nurse advised that defendant refused medical treatment after Trooper Wittemann and Trooper Micele left the room. When the officers left, defendant proceeded to the lobby. Upon spotting the officers in the lobby, defendant locked himself in the bathroom. The State does not dispute that this constituted an out-of-court statement; however, the State contends that the statement was not offered for the truth of the matter asserted. Nonetheless, this issue is forfeited.

¶ 58   Defense counsel objected to the testimony at the time Trooper Wittemann testified. However, defendant failed to include this issue in his posttrial motion for a new trial. Thus, the issue is forfeited on appeal. To preserve an error for review, the party must object at trial and present the issue in a posttrial motion. *People v. Nelson*, 235 Ill. 2d 386, 436 (2009). Defendant failed to reassert this argument in his posttrial motion and therefore forfeited such issue. *People v. Salamon*, 2022 IL 125722, ¶ 56 (defendant forfeits arguing an error on appeal when the issue was not properly preserved by raising it at trial and in a posttrial motion). Defendant concedes he failed to preserve his argument but requests plain error review. The plain error doctrine allows reviewing courts to overlook a defendant's forfeiture of an error under two specific circumstances. *People v. Hileman*, 2020 IL App (5th) 170481, ¶ 40.

¶ 59   In the case before us, defendant merely contends that his failure to properly preserve this issue is "excusable under the principal that allows for review of constitutional errors that were raised in a contemporaneous objection but not preserved in a written post-trial motion," citing *People v. Cregan*, 2014 IL 113600, ¶¶ 15-18. Defendant's reliance on *Cregan* is misplaced. There, the Illinois Supreme Court considered whether the constitutional-issue exception applied in the defendant's case, or whether the defendant's claims were better considered in postconviction proceedings. *Cregan*, 2014 IL 113600, ¶ 18. In his brief, defendant makes no reference whatsoever to a potential future postconviction proceeding. Succinctly stated, defendant fails to develop his plain error argument. It is unclear to this court throughout this section of defendant's brief whether he raises the issue under the first or second prong of plain error. See *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29 ("A reviewing court is entitled to have issues clearly defined with *** cohesive arguments presented; this court is not a repository into which an appellant may foist the

18

burden of argument and research \*\*\*."). Therefore, we honor defendant's forfeiture of this issue on appeal.

¶ 60    Forfeiture notwithstanding, Trooper Wittemann's testimony regarding the nurse's out-of-court statement spans merely one paragraph of a day-long jury trial. Even in the absence of the nurse's statement, upon reentering the hospital, Trooper Wittemann could reasonably conclude that there was no longer a medical emergency where defendant was standing in the hospital lobby. By observing defendant in the hospital lobby without medical monitoring equipment, a reasonable person could conclude that defendant was either discharged from the emergency room or refused further treatment.

¶ 61    For these reasons, we find that defendant forfeited review of his argument that the prosecution elicited improper testimonial hearsay that a nontestifying hospital nurse told Trooper Wittemann that defendant refused medical treatment.

¶ 62                                    D. Closing Arguments

¶ 63    Finally, defendant argues that the prosecutor committed reversible error during closing arguments. Defendant contends that "the prosecutor engaged in extensive improper closing arguments that (i) misstated the law, (ii) asserted factual claims that were not supported by the evidence, (iii) shifted the burden of proof onto Kiser, and (iv) invited the jury to rely upon unduly speculative testimony that was outside of the personal knowledge of a witness." The State responds, arguing that the prosecutor's remarks in closing and rebuttal were neither plain error nor so egregious as to amount to reversible error. We agree with the State.

¶ 64    Defendant lists multiple instances where the prosecutor allegedly engaged in burden shifting or misstating the evidence. However, in many of the specific cases cited by defendant in his brief, the trial court overruled defendant's objections.

19

¶ 65     For example, during closing argument, relevant to this appeal, the State said, "So if he hadn't been drinking, of course he would blow because—" Defense counsel objected on grounds of burden shifting. The trial court overruled the objection. The State later stated: "They go to the hospital. And what happens there? He immediately starts putting the wires on himself and has a medical emergency so he can't do the test. And then as soon as the troopers leave what happens? He's fine." Defendant objected and stated that the State misstated the evidence. The trial court overruled the objection.

¶ 66     The State later stated, "If someone due to drinking any amount of alcohol is a little bit slower or a little bit cloudier or a little bit inattentive, just a little bit, they're not safe to be behind the wheel. That's why the law—" Defense counsel objected on the grounds that the State misstated the law. The court stated, "Counsel may argue, but the arguments of lawyers are not to be taken as statements of law. Instructions on the law will come from me after the final arguments are completed."

¶ 67     The State continued, "Buzzed driving is drunk driving." Defense counsel again objected on grounds that the State misstated the law. The trial court sustained the objection. The State continued, "He's drinking to be buzzed, and buzzed driving means he's under the influence." Defense counsel objected that the State misstated the law. The trial court said, "I don't see the word buzzed anywhere in that definition of under the influence." The State explained, "Buzzed is reducing your ability to think and act with ordinary care. That is the definition." Defense counsel again objected. The court stated, "I'll allow you to argue."

¶ 68     Later in the argument, the State stated, "And then they get him to the hospital and he starts faking clearly a medical emergency." Defense counsel objected that the State misstated the

20

evidence. The trial court offered the jury a lengthy instruction that advised the jury that arguments are not evidence, and the jury should use its own recollection of the evidence.

¶ 69 The State later argued: "He's drinking alcohol while driving here." Defense counsel objected on the grounds that the State misstated the evidence. The trial court stated, "Counsel may argue, but again, if the attorneys argue facts that are not based on the evidence, you should disregard those arguments." On rebuttal, the State argued: "A reduced ability from ordinary care is a very small step down from normal." Defense counsel objected on the grounds that the State misstated the law. The trial court overruled the objection. Later, the State argued, "If he had questions, he should have asked them." Defense counsel objected on the grounds of burden shifting. The trial court overruled the objection.

¶ 70 Our supreme court has held that "comments in prosecutorial closing arguments will rarely constitute second-prong plain error because the vast majority of such comments generally do not undermine basic protections afforded to criminal defendants." *People v. Williams*, 2022 IL 126918, ¶ 56. The complained-of remarks did not constitute a material factor in the defendant's conviction. In the case before us, the jury was properly instructed regarding closing arguments, which limited any potential prejudice. See *People v. Johnson*, 2023 IL App (5th) 190426-B, ¶ 45. The trial court often instructed the jury that the arguments of the attorneys were not to be taken as statements of law. The court advised the jury that if "there is a possible misstatement of the evidence, you should be advised that any statements by the lawyers that are not based on the evidence should be disregarded by you. You should use your own recollection of the evidence." The court admonished the jury that "what the lawyers say during arguments is not evidence." The trial court also reminded the jury that what the lawyers said during argument was not evidence. Thus, the trial court's repeated instructions minimized any prejudicial effect from the prosecutor's

comments. Further, regarding defendant's allegations that the prosecution engaged in burden shifting, the jury was properly instructed on the State's burden of proof. Viewing the prosecutor's comments in the context of the entire closing argument, we conclude that any allegedly improper remarks did not affect the defendant's substantial rights to such a degree that his trial was fundamentally unfair or that the comments were a material factor in the verdict. Thus, based on our review of the record, we cannot say that, even considering the cumulative weight of the prosecutor's comments, the defendant's trial was fundamentally unfair.

¶ 71    Moreover, it is disingenuous for defendant to argue that "several of these misstatements of law were made after the Court had already sustained defense objections to previous misstatements, and after the Court had already given multiple curative instructions to the jury." Defendant argues that the "jurors witnessed the prosecutor repeatedly disregarding the judge's legal instructions and ignoring his evidentiary rulings." Despite defendant's characterization otherwise, in the case before us, as evidenced in the rulings above, the trial court often overruled objections or merely offered the jury an instruction that argument is not evidence.

¶ 72    Defendant argues that plain error and ineffective assistance of counsel apply to all unobjected-to errors in closing argument. However, defendant cannot show that a reasonable probability exists that the result of the proceeding would have been different had defense counsel objected to the prosecutor's improper comments during the trial and included them in a posttrial motion. See *Johnson*, 218 Ill. 2d at 139 (when no error occurs, there can be no plain error, and counsel cannot be ineffective for failing to raise the issue). Where the prosecutor did not err in closing arguments, the trial court properly ruled on any objections, and the court properly instructed the jury at the start of arguments, during arguments, and at the end of arguments, we cannot say that the prosecutor committed reversible error during closing arguments.

¶ 73                                                                III. CONCLUSION

¶ 74    For the reasons stated, we affirm defendant's conviction for aggravated driving under the influence.

¶ 75    Affirmed.